Felix **WAISOME**, Freddie **McMillian**, **Richard B. Keith**, Robert L. **Bethea**, **Ellsworth Corum**, Jr., Hilary King, Roderick W. **Upshur**, Albert **Gachett**, George Bayley, Hilary A. King, William Preyer, Esq., and Leonard Williams on behalf of themselves and all those similarly situated, **Plaintiffs–Appellees**,

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Board of Commissioners, Stephen Berger and Henry Degeneste, Defendants–Appellees,**

**The Port Authority Police Benevolent Association, Incorporated, Defendant–Appellant,**

**Nicholas A. Tagarelli, Charles Torres, Michael Palermo, Anthony Fitzgerald, Frank Heekin & Kenneth Yeglinski, Intervenor–Defendants–Appellants.**

Nos. 1321, 1322, Dockets 92–9093L, 92–9171CON.

United States Court of Appeals, Second Circuit.

Argued May 17, 1993.

Decided July 30, 1993.

Anthony Cornachio, Mineola, NY (Michael C. Axelrod, Axelrod Cornachio & Famighetti, of counsel), for defendant-appellant The Port Authority Police Benevolent Ass'n, Inc.

Dennis J. Alessi, Newark, NJ (Fox and Fox, of counsel), for intervenor-defendants-appellants.

Eric Schnapper, New York City (Elaine R. Jones, NAACP Legal Defense and Educational Fund, Inc., Lowell Johnston, of counsel), for plaintiffs-appellees.

Carlene V. McIntyre, New York City (Milton H. Pachter, Arthur P. Berg, Philip A. Maurer, James Begley, of counsel), for defendants-appellees The Port Authority of New York and New Jersey.

Before: WINTER and JACOBS, Circuit Judges, and MUKASEY, District Judge.*

WINTER, Circuit Judge:

A defendant union and various intervening defendant police officers appeal from Judge Duffy's order approving a Consent Decree resolving two related employment discrimination cases. The complaints in the two cases claimed the Port Authority of New York and New Jersey administered promotional examinations that had disparate impacts on black officers in violation of Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). The Consent Decree was signed only by the plaintiffs and the Port Authority.

In this consolidated appeal, we conclude that the union lacks standing to raise a claim that affects only members of the plaintiff

---

* The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

class. We dismiss that portion of the union's appeal. We also conclude that the union's claim that the Consent Decree violates its collective bargaining agreement with the Port Authority lacks merit and affirm on that portion of the union's appeal. The intervening police officers have passed a promotional examination and seek to have the resultant promotions list extended to continue their eligibility for promotion. We reverse in part and order the extension of the expired 1990 list of officers eligible for promotions.

## BACKGROUND

The Port Authority is an agency created by the State of New York and the State of New Jersey for the operation, administration and protection of Kennedy and LaGuardia Airports, bridges, roads, tunnels, and other terminal facilities in New York and New Jersey. It employs its own police force. During 1986 and early 1987, the Port Authority administered a three-part examination to police officers seeking promotion to the position of sergeant. In 1987, officers with passing scores were placed in rank order based on their scores on a list of candidates eligible for promotion ("the 1987 List"). As sergeant vacancies opened during the following three years, positions were filled by the officer with the highest ranking score on the 1987 List.

During 1990, the Port Authority administered another examination to various police officers seeking promotions to the position of sergeant. Passing candidates were placed on a 1990 promotion-eligible list ("the 1990 List"), also ranked by score. The 1990 List was scheduled to be in effect from October 1990 through October 15, 1992.

Plaintiffs Felix Waisome, Freddie McMillian, Richard B. Keith, Robert L. Bethea, Ellsworth Corum, Jr., Hilary King, and Roderick W. Upshur are black officers who took the 1986–87 promotional examination. They brought a class action ("*Waisome I*") on behalf of themselves and others similarly situated pursuant to Title VII. The defendants were the Port Authority, its Executive Director, its Board of Commissioners, the Su-

perintendent of Police, and the Port Authority Police Benevolent Association, Inc. (the "PBA"), the bargaining representative of the Port Authority police officers. The complaint alleged, *inter alia,* that the examination had an adverse disparate impact upon black officers.

When plaintiffs moved for class certification and partial summary judgment on liability, the Port Authority cross-moved for summary judgment. The plaintiffs offered statistical evidence indicating that the examination had a disproportionately adverse impact on black officers. The district court certified the plaintiff class and denied the plaintiffs' partial summary judgment motion. It granted the cross-motion for summary judgment on the ground that the plaintiffs had failed to make a *prima facie* showing that the examination had a disparate impact on black police officers. On appeal, however, we reversed, holding that summary judgment was inappropriate because the plaintiffs had proffered "statistical evidence in th[e] record evidenc[ing] a disparity significant enough to suggest a violation of Title VII." *Waisome v. Port Authority,* 948 F.2d 1370, 1372 (2d Cir.1991).

While *Waisome I* was pending, plaintiffs Albert Gachett, George Bayley, Hilary A. King, William Preyer, and Leonard Williams, also black officers, brought a second class action ("*Waisome II*"), claiming that the 1990 examination and the resultant 1990 List also violated Title VII because they had an unlawful disparate impact upon black officers.[1]

The 1990 List was suspended in November 1991 because of the pending litigation, and the Port Authority ceased making promotions. The suspension affected non-black police officers eligible for promotion, including Nicholas A. Tagarelli, Charles Torres, Michael Palermo, Anthony Fitzgerald, and Kenneth Yeglinski. Tagarelli and other officers eligible for promotion from the 1990 List ("Intervenors") were permitted to intervene

---

**1.** Plaintiffs brought *Waisome II* against the Port Authority. The PBA was permitted to intervene as a party defendant.

as defendants in *Waisome II* and were granted intervenor status.

Plaintiffs and the Port Authority entered into negotiations. On June 17, 1992, they reached a settlement embodied in a Consent Decree that resolved both *Waisome* cases and that is at issue on this appeal. According to the agreement, five black officers who passed the 1986–87 examination were to be promoted based upon seniority, not the rank of their examination score. Two black officers who passed the 1990 examination were to be promoted based upon their seniority. The next five vacancies were to be awarded to candidates on the 1990 List based upon rank order, with the sixth vacancy filled by the next most senior black candidate on the 1990 List. Thereafter, one black officer from the 1990 List was to be promoted to fill every seventh vacancy based upon the officer's rank order. The Consent Decree also requires the Port Authority to pay plaintiffs' counsel, the NAACP Legal Defense and Educational Fund, Inc., $250,000 in connection with the 1987 List and $8,000 in connection with the 1990 List. The money is to be distributed among those plaintiffs on the respective lists who do not receive promotions. The Consent Decree did not contain a provision regarding extension of the 1990 List, which, by its terms, was due to expire on October 15, 1992.

Judge Duffy held a fairness hearing regarding the Consent Decree. On September 24, 1992, he approved the Consent Decree. His brief final order read as follows:

> In approving a consent decree in a job discrimination case, no court can expect to satisfy completely any of the litigants or the members of the class. The decree can only achieve rough justice and equity in a human way. Recognizing, as I do, that I am so constrained in the instant matter, I have determined that the most just solution upon consideration of all the circumstances can only be achieved by signing the consent decree. While its imperfections have been disclosed to me, the overall injustices which would flow from failing to act this way impel me to sign the decree and direct that it be filed forthwith by the clerk of this court.

Since time may realistically be of the essence, no stay pending appeal will be granted.

After the Consent Decree was approved, five black officers were promoted from the 1987 List. Thereafter, on October 9, 1992, the 1990 List's suspension was lifted and promotions were made from it until it was deemed expired on October 15, 1992. In total, the 1990 List was in effect for roughly fourteen months and thirty-two officers received promotions from it, ten of whom were promoted prior to the List's suspension. Since the 1990 List's expiration, there has been no valid eligible list from which new sergeants can be appointed.

## DISCUSSION

Both the PBA and the Intervenors appeal from the approval of the Consent Decree.

### 1. *The PBA's Appeal*

The PBA's appeal is a narrow one. It does not challenge the provision for promotions based on racial criteria. Instead, it objects only to the distribution plan for monetary relief to class members who are not promoted and to the selection of minority officers for promotion on the basis of seniority rather than rank order as purportedly required by the collective bargaining agreement.

■ However, the PBA lacks standing to object to the distribution plan. The standing requirement is derived from Article III. The Supreme Court has explained that:

> Art[icle] III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982) (citations omitted).

Generally, litigants must pursue their own legal interests or rights—not those of third

parties. *See, e.g., Department of Labor v. Triplett,* 494 U.S. 715, 718–20, 110 S.Ct. 1428, 1431, 108 L.Ed.2d 701 (1990); *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). However, an organization such as a union may assert claims on behalf of its membership. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

With regard to its objections to the distribution plan, the PBA argues that it has standing because it represents injured members. We disagree. The distribution plan affects only the method of allocating monetary relief among members of the plaintiff class. It does not, therefore, affect union members generally. Although the named plaintiffs are PBA members, they have each sought and obtained separate representation by the NAACP Legal Defense and Educational Fund, and no plaintiff class member has opted out or challenged the plan of distribution. The Fund negotiated and executed the Consent Decree on the class's behalf, and the PBA, which intervened as a defendant, has no standing to claim also to represent it in a challenge to the Consent Decree. *See . United States v. City and County of San Francisco,* 979 F.2d 169, 171 (9th Cir.1992) (union "may not derive standing from those members who have chosen separate representation"). We therefore dismiss this portion of the PBA's appeal.

█ Similar considerations might deprive the PBA of standing to object to the promotions-by-seniority provision of the Consent Decree because that too may have no concrete effect on union members outside the plaintiff class. Nevertheless, a union may have an interest in asserting contractual rights, *cf. United States v. City of Miami,* 664 F.2d 435 (Former 5th Cir.1981) (en banc) (per curiam), although on the present facts such an argument seems an assertion of only an abstract right in light of the absence of any concrete effect on non-plaintiff members of the PBA. We need not reach the issue, however, because the purported conflict between the collective bargaining agreement and the Consent Decree does not exist. The agreement recognizes that the method of promoting officers to sergeant may be sub-

ject to modification as a result of court proceedings. It thus provides that a promotion list "shall not be altered or added to, except in connection with … any … available remedy, including a plenary court hearing." The parties thus anticipated the present circumstances, and the Consent Decree does not alter any contractual right of the PBA. We therefore affirm on this portion of the union's appeal.

### 2. *The Intervenors' Appeal*

The Intervenors contend that the 1990 List should have been extended beyond its termination date. They assert that extension is necessary on equitable grounds to compensate promotable officers for the suspension of the 1990 List for approximately ten months during the litigation. They further contend that extension of the 1990 List would further the goals of the Consent Decree because a black officer receives every seventh promotion from the 1990 List.

█ Plaintiffs, who negotiated and agreed to the Consent Decree, defend the district court's failure to extend the 1990 List as within its discretion. However, they also indicate that they have no objection to extension of the 1990 List in the recognition that some plaintiffs would benefit. At oral argument, the PBA stated that it took no position regarding the 1990 extension of the 1990 List. The Port Authority defended the district court's failure to extend the 1990 List. Why the Port Authority opposed extension is unclear. Extension of the 1990 List would increase the Port Authority's options: without a list it cannot promote any officers to sergeant. According to the Port Authority, the existence of a valid list would not, however, compel it to promote anyone. The Port Authority thus would have nothing to lose and something to gain from extension because there are indications that a shortage of sergeants exists. *See* Letter Brief for Intervenors, May 17, 1993, at 3. The key to its position perhaps is that, until the very moment of oral argument, it believed that its bargaining partner, the PBA, opposed extension and perhaps might litigate over it. *See* Brief for the Port Authority at 25 n. 7. After oral argument, we received a letter from the Port Authority stating that it had no objection to the extension of the 1990 List. The

PBA then sent us a letter stating that it was now "opposed to any extension of the list, in light of the recent announcement by the Port Authority that an examination has been scheduled for later this month." This statement is entirely disingenuous because the "recent announcement" occurred two months before oral argument. One of the briefs indicates that the shortage of sergeants is a source of overtime pay for some PBA members. Letter Brief for Intervenors, May 17, 1993, at 3. What other reasons may have motivated the PBA's seemingly whimsical positions on this appeal are unknown to us.

We thus find ourselves in the following posture. Extension of the 1990 List might benefit the plaintiff class, and it does not object. The Port Authority, the other party to the Consent Decree, may also benefit and does not object. The PBA objects but has not given us any cogent grounds for declining to extend the List. The district judge may have been within his discretion in not extending the 1990 List in light of the Port Authority's earlier opposition, although his brief order offers no clue as to his thinking. In any event, his decision was made without the benefit of knowing that the parties to the Consent Decree do not object to extension.

The preferable course would be to remand but, because a new list is due as early as December, a remand might consume so much time that extension of the 1990 List would be a futile gesture. We believe that we should order extension of the 1990 List. The parties to the Consent Decree, as well as the Intervenors, who do have equities in their favor, might benefit from extension, and no good reason to decline to do so has been proffered by the PBA. In particular, the PBA has not asserted any contractual right it may have to prevent extension of the 1990 List. Even if such a right exists, therefore, we deem it to have been waived. We therefore reverse and order the extension of the 1990 List until hiring begins from a new list.

Dismissed in part, affirmed in part, and reversed in part. The mandate shall issue forthwith.